[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Jean Patoine, by way of an Amended Complaint in three counts, seeks damages from the defendants, Timothy Malley and his wife, Susan Malley, alleging breach of contract and misrepresentation in the sale of real estate.
The defendants deny the material allegations of the amended complaint.
The factual situation herein is relatively simple. The defendants placed their real estate, 886 Burlington Avenue, Bristol, Connecticut, for sale through a real estate firm. The plaintiff became aware that the property was for sale and visited and examined the property on various occasions, two of which were with his real estate agent, Monique Couture.
The plaintiff testified that he viewed the premises' boundaries accompanied by his agent, Monique Couture, during which the defendant, Timothy Malley, pointed out the fence on the south side of the premises as being the southerly boundary of the premises at that time. Malley also pointed to an iron pin adjoining the fence post at the westerly end of the fence as being the boundary marker; that, they continued eastward along the fence to its easterly end where the defendant, Malley, indicated was the rear property line. The plaintiff testified that his real estate agent, Monique Couture, was also present during this time.
Monique Couture's testimony was somewhat different in that she did walk in the side and rear areas of the premises with the plaintiff but was not with him at the fence, nor did she see the plaintiff with Timothy Malley at the fence.
She implied that she thought the fence was the southerly border, apparently because the fence was to the south of the premises, and there was no other obvious indication of any demarcation of the property line.
The plaintiff's son, Gill Patoine, testified that he was on the premises once with his father and that they walked the fence with Mr. Malley and were told by him that the fence was the boundary and that an iron pin was pointed out as being the boundary marker.
The plaintiff further points out that the grass area was mowed as a continuous piece of the defendants' property with no obvious boundary CT Page 6073 line other than the fence.
Subsequently, the plaintiff purchased the property from the defendants. A few months later, he discovered that the property's southerly boundary was actually twelve feet north of the fence line, and that the twelve-foot strip of land that he assumed was part of the premises he purchased was a mutual right-of-way leading to a parcel of land to the rear of the premises he had purchased.
The defendants deny that they or one of them ever toured the premises' southern boundary with the plaintiff or his agent before the purchase sale contract was signed, or that on the date that the plaintiff testified that the fence was pointed out as the boundary line, he, the defendant, Mr. Malley, was present. He testified that he specifically had arranged to have all dealings to be made with his agent and that all questions were to be relayed to him and his wife by the agent. The reasons for this arrangement were that both of the defendants were employed: he as a chef and she in Newington, making it difficult for them to arrange to leave their employment to attend viewings by potential buyers. Further, Mr. Malley felt that his presence as an owner might inhibit purchasers in a free and complete examination of the premises.
Also, the defendants point out that the land records of the City of Bristol contained all the material dimensions regarding the property lines and the adjoining passway, together with a plot plan giving the lot dimension, the location of the house on the lot and the passway on the southerly side of the lot; that the plaintiff's argument that he had no knowledge that a passway was to the south of the lot he purchased as well as the location of the southern boundary line was not because it was not available to him but because he failed to check the land records or failed to have a knowledgeable person check them and advise him of the contents of these records.
Therefore, as to plaintiff's allegations of breach of contract, set out in Count One of his complaint, it is that the defendants failed to deliver to the plaintiff that parcel area set out in the parties' buy/sell agreement.
The court finds that the defendants did in fact transfer the contracted for land area in the deed delivered to the plaintiff. The main thrust of plaintiff's evidence presented to the court was to the effect that an additional twelve (12) foot strip adjoining the purchased land was also described and pointed out to the plaintiff as being a part of the premises being sold.
Since no evidence was presented to the court that this additional strip CT Page 6074 was part of the agreement, or that the dimensional area included this strip of land, the court finds no breach of contract occurred on the defendants' part.
The plaintiff's further contentions set out in Counts Two and Three that the defendants misrepresented to the plaintiff the southern boundary of the lot for the purpose of inducing the plaintiff to purchase the premises is based upon statements of and actions by the defendant, Timothy Malley, knowingly pointing out the premises' southern boundary as being marked by a metal fence when in fact this was not true, and he knew this not to be true.
The court, after hearing the evidence presented, examining the exhibits, and considering the arguments of the parties and then applying the applicable law finds:
As to Count One — that the plaintiff failed to prove by a preponderance of the evidence that the defendants breached the parties' buy/sell agreement in that they failed to deliver the contracted for real estate. As to Counts Two and Three — similarly, as in Count One, the court finds a failure of proof by the plaintiff that the defendants misrepresented the southern boundary of the premises being sold.
The plaintiff's evidence that the defendants, deliberately or negligently misrepresented to the plaintiff the location of the premises' southern boundary as an inducement to have him purchase the premises was conflicting and contradictory to the extent that it was insufficient proof by a preponderance of all the evidence for the court to determine the issues in the plaintiff's favor.
Therefore, Judgment is to enter for the defendants on all counts, together with court costs.
Kremski, J.T.R.